GENERAL DRIVERS, LOCAL #346, for Itself and on Behalf of Dennis Murdock, Appellant,

v.

AITKIN COUNTY BOARD and Aitkin County Sheriff William Sobey, Respondents,

and

Louis CHALICH as Sheriff of Cass County, Respondent,

v.

George JACOBS, Arbitrator, Respondent,

Cass County, Respondent,

Law Enforcement Labor Services, Inc., et al., Appellants,

and

COUNTY OF POPE, Respondent,

v.

POPE COUNTY DEPUTY SHERIFFS' ASSOCIATION, et al., Respondents,

Gerald Moe, Sheriff of Pope County, Appellant.

Nos. 49881, 51995 and 81–112.

Supreme Court of Minnesota.

May 21, 1982.

Halverson, Watters, Bye, Downs & Maki and Donald L. Bye, Jeanne M. Forneris, Duluth, for Law Enforcement Labor Services, Inc., et al. and General Drivers, Local #346.

Marshall & Savage and Joseph B. Marshall, Circle Pines, for Moe in No. 81–112.

John R. Leitner, County Atty., Aitkin, for Aitkin County Bd., et al. in No. 49881.

Marshall & Savage and Joseph B. Marshall, Circle Pines, for Chalich in No. 51995.

George Jacobs, pro se.

Peter Bergstrom, Sp. Counsel, St. Paul, for Cass County in No. 51995.

Michael Milligan, County Atty., Walker, for Cass County in No. 51995.

Warren Spannaus, Atty. Gen., and Brad Engdahl, Sp. Asst. Atty. Gen., St. Paul, for County of Pope in No. 81–112.

O'Connell & O'Connell and Charles O'Connell, St. Paul, for Pope County Deputy Sheriffs' Assn., et al. in No. 81–112.

YETKA, Justice.

These three cases were consolidated for oral argument and consideration because of the similarity of facts and legal issues involved. Case No. 49881 is an appeal from an order of the Aitkin County District Court dated January 10 and filed January 16, 1979, granting the defendant county

board and sheriff their motion for summary judgment.

Case No. 51995 is an appeal from an order for judgment of the Cass County District Court entered October 10, 1980, permanently restraining and enjoining defendants from further proceedings related to the arbitration of a dispute involving the authority of the respondent sheriff to terminate the employment of a deputy sheriff. Also included in this case is an appeal from the same court's granting of a temporary restraining order against defendants.

Case No. 81–112 is an appeal from an order for summary judgment of the Pope County District Court entered December 31, 1980, determining that the County of Pope did not commit an unfair labor practice, but finding that a collective bargaining agreement between the County of Pope and the deputy sheriffs' association is a binding agreement under the Minnesota Public Employment Labor Relations Act of 1971, Minn.Stat. §§ 179.61–.76 (1980) (hereinafter PELRA). The court ordered defendant Ochocki reinstated as deputy sheriff for Pope County.

We reverse the trial courts in Case No. 49881 and Case No. 51995 and affirm the trial court in Case No. 81–112.

The facts are similar in these consolidated cases. To eliminate any possible confusion, however, the facts of each case will be treated separately.

a. *Case No. 49881*

In 1976, General Drivers Union Local #346, the designated bargaining representative of the deputy sheriffs of Aitkin County, entered into a collective bargaining agreement (hereinafter CBA) with Aitkin County. Sheriff William Sobey was not a party to and did not participate in the negotiations of this CBA. Article 4 of the CBA sets out the grievance procedure to be followed. A grievance, as defined in the CBA, includes dismissals and suspensions. Article 5 of the CBA provides further that employees "shall be discharged only for just cause after the investigation" pursuant to the grievance procedure. Aitkin County has not adopted the optional sheriff's civil service system as set forth in Minn.Stat. §§ 387.31–.45 (1980).

Plaintiff Dennis Murdock was a deputy sheriff employed by Aitkin County and an honorably discharged veteran. On August 9, 1977, Deputy Sheriff Murdock received a letter of termination for cause as determined by the sheriff.

After receiving notice of termination, Deputy Sheriff Murdock began grievance procedures pursuant to the CBA. In August 1977, a meeting regarding the grievance was held and attended by Murdock, Sheriff Sobey and union officials. Shortly after, Sheriff Sobey apparently agreed to extend the time for compliance with the grievance procedure. Further meetings concerning the alleged grievance were held on September 6 and 22 and attended by the sheriff. At the September 22 meeting, Sheriff Sobey apparently agreed to further time extensions and gave the impression that if the matter were not settled, he would consent to arbitration. A further time extension was made and confirmed by letter on October 4, 1977. Apparently neither Sheriff Sobey nor the county objected to the grievance procedures at these meetings.

On October 26, 1977, Sheriff Sobey wrote to Deputy Murdock, informing him of his right to a veteran's preference hearing pursuant to Minn.Stat. § 197.46 (1980). On December 12, 1977, Deputy Murdock responded and requested a hearing.

During and after this period, Sheriff Sobey changed his legal representation several times, making it difficult for the plaintiff to obtain information concerning the status of the grievance and arbitration. In December 1977, an attorney representing the sheriff agreed with the plaintiff to postpone any determination respecting Deputy Murdock's veteran's preference rights.

In February 1978, General Drivers commenced this action for a temporary restraining order and injunction to order arbitration concerning the termination of employment of Deputy Murdock. Plaintiff re-

quested an order requiring the reinstatement of the deputy and compliance with the grievance procedure. Several hearings were held and on May 12, 1978, the defendants informed the trial court of their refusal to arbitrate. On January 10, 1979, the trial court granted defendant's motion for summary judgment.

### b. *Case No. 51995*

On October 2, 1979, Cass County and Law Enforcement Labor Services, Inc. (LELS) entered into a collective bargaining agreement. Sheriff Chalich was apparently aware of the negotiations which resulted in the CBA, but was not allowed or invited to participate in those negotiations, although they were open to the public.

Sheriff Chalich apparently never followed the provisions of the CBA. Rather, he followed the rules and procedures contained in Minn.Stat. §§ 387.31–.45 (1980) relating to the sheriff's civil service system, which Cass County has adopted. Sheriff Chalich, however, did communicate with LELS concerning disciplinary problems with his deputies.

In January 1980, Sheriff Chalich notified Deputy Finn that his employment as deputy sheriff was to be terminated for cause and advised him of his rights under the civil service system. While Deputy Finn never requested a civil service hearing, LELS requested compliance with the grievance procedures contained in the CBA. The county and Sheriff Chalich contended that the sole issue subject to arbitration was whether the event which resulted in the discharge had occurred. LELS claimed that the issue of whether there was just cause was also subject to arbitration. Both parties submitted the issue of arbitrability to defendant George Jacobs, an arbitrator. On July 8, 1980, Sheriff Chalich applied for a temporary restraining order to prevent the parties from proceeding to arbitration. On October 10, 1980, the trial court granted Sheriff Chalich's application for injunctive relief.

### c. *Case No. 81–112*

On January 8, 1980, the Pope County Deputy Sheriffs' Association and the Pope County Board of Commissioners entered into a CBA. The CBA incorporated the grievance procedure promulgated by the Bureau of Mediation Services and forbade discharges from employment except for cause. Apparently Sheriff Gerald Moe was aware of the negotiations leading to the CBA.

On March 17, 1980, Sheriff Moe discharged Deputy Sheriff Lloyd Ochocki, effective April 17, 1980. Sheriff Moe did not specify the grounds for the termination, but did refer to his statutory powers under Minn.Stat. § 387.14 (1980). On April 21, 1980, Deputy Lloyd Ochocki filed a grievance pursuant to the CBA and on May 12, 1980, requested binding arbitration. In response, the county brought this declaratory judgment action. The Pope County District Court granted the county's motion for summary judgment, ruling that Minn.Stat. § 387.14 (1980) is modified by a CBA negotiated pursuant to PELRA, but that the county, in bringing the declaratory judgment action and in initially refusing to arbitrate, had not committed an unfair labor practice. The unfair labor practices ruling has not been appealed.

The issues raised by these appeals are:

1. Do PELRA and any CBA's entered into pursuant thereto modify, supersede, or otherwise repeal a sheriff's powers under Minn.Stat. § 387.14 (1980)?

2. Are deputy sheriffs under Minn.Stat. § 387.14 (1980) entitled to a veteran's preference hearing under Minn.Stat. § 197.46 (1980)?

3. Did the trial court err in granting Sheriff Chalich's motions for a temporary restraining order and permanent injunction?

4. Were the Aitkin County Board and Sheriff Sobey estopped from refusing to comply with arbitration procedures under PELRA and the CBA negotiated thereto or otherwise guilty of unfair labor practices?

The facts surrounding the termination of the deputy sheriffs are similar in all three cases. Therefore, in the interests of conciseness and clarity, the discussion concerning the PELRA issue will involve all three cases. The other three issues arise separately in Case Nos. 49881 and 51995 and will be treated separately.

We begin our discussion by reviewing the statutes relevant to this appeal. Minn.Stat. § 387.14 (1980) provides in part:

> The county board shall determine the number of permanent full time deputies and other employees and fix the compensation for each position. The county board shall also budget for special deputies, jailers, matrons, bailiffs and other temporary employees and shall fix their rates of compensation. The sheriff shall appoint in writing the deputies and other employees, for whose acts he shall be responsible and whom he may remove at pleasure.

Under this ancient statute first adopted over 100 years ago, the sheriffs in these consolidated cases argue that they are given the power to terminate the employment of deputy sheriffs at will and without cause. The various sheriffs and county boards also argue that, unless the sheriff is made a party to the agreement, any CBA's entered into pursuant to PELRA are void to the extent that they affect or restrict the sheriff's ability to terminate the employment of his deputies at will. In addition, the sheriffs argue that they should be considered co-employers for purposes of PELRA.

PELRA, however, defines the term public employer and states:

> "Public employer" or "employer" means * * * (c) the governing body of a political subdivision or agency or instrumentality thereof which has final budgetary approval authority, in respect to employees of that subdivision, agency or instrumentality. * * * *Nothing in this subdivision shall be construed to diminish the authority granted pursuant to law to an appointing authority in respect to the selection, direction, discipline or discharge of an individual employee insofar as such action is consistent with general procedures and standards relating to selection, direction, discipline or discharge which are the subject of an agreement entered into pursuant to sections 179.61 to 179.76.*

Minn.Stat. § 179.63, subd. 4 (1980) (emphasis added).

The Minnesota Veterans Preference Act grants veterans, *inter alia*, the right to a hearing before being discharged from county employment. The act contains the following exception from its operation:

> Nothing in * * * this section shall be construed to apply to the position of private secretary, teacher, superintendent of schools, *or one chief deputy of any elected official or head of a department, or to any person holding a strictly confidential relation to the appointing officer.* The burden of establishing such relationship shall be upon the appointing officer in all proceedings and actions relating thereto.

Minn.Stat. § 197.46 (1980) (emphasis added).

In addition, Minn.Stat. §§ 387.31–.45 (1980) provides for an optional civil service system for a county's sheriff's department. For counties adopting the sheriff's civil service system, Minn.Stat. § 387.37 (1980) provides that "[n]o deputy sheriff or employee after continuous employment of one year shall be removed or discharged except for cause and upon written charges and after an opportunity to be heard * * *."

These statutes pose a number of possible alternative situations, depending upon whether or not the county has adopted a sheriff's civil service system, negotiated labor contracts, or employed deputy sheriffs who are also veterans. Among the possibilities are these:

■ 1. The situation could exist where the deputy sheriff is not a veteran, where there is no sheriff's civil service system, and where neither the county board nor the sheriff has entered into a CBA pursuant to PELRA. In this situation, only Minn.Stat. § 387.14 (1980) applies, giving the sheriff sole discretion over the discharge of his deputies.

2. Another possibility is where neither a sheriff's civil service system has been adopted nor a CBA negotiated by either the sheriff or the county, but the deputy sheriff is a veteran. Under Minn.Stat. § 197.46 (1980), we hold that a deputy sheriff is entitled to protection under the Veterans Preference Act unless the deputy is a chief deputy. There is not such a confidential relationship between deputy sheriffs and the sheriff so as to bring all deputy sheriffs within the scope of that exception to the Veterans Preference Act.[1] The statute clearly exempts only a chief deputy. We thus disagree with the opinion of the Attorney General which argued that deputies are confidential employees. Op.Minn.Atty. Gen.No. 85C (July 1, 1965).[2] Regarding confidential status, we can see little difference between the situation of a deputy in a sheriff's department and an individual patrol officer. It is significant to note that we have previously held the latter not to be a confidential employee. *Leininger v. City of Bloomington*, 299 N.W.2d 723 (Minn. 1980).

3. Another possibility is where the county board has elected to adopt a sheriff's civil service system under Minn.Stat. §§ 387.31–.45 (1980). In that situation, in the absence of a CBA entered into by either the sheriff or the county, the sheriff's civil service system clearly prevails over Minn. Stat. § 387.14 (1980) to the extent of any conflict between them. The Veterans Preference Act would also take precedence over Minn.Stat. § 387.14 (1980) if the deputy were a veteran.[3]

4. The possibility exists where the sheriff's civil service system has not been adopted, but the sheriff has entered into a CBA on his own without county board approval. This clearly would be void for the reasons set forth below.

5. The fifth possibility, and the one applicable here, is where, regardless of whether a sheriff's civil service system has been adopted, a CBA has been entered into between the county board and the bargaining representative of the deputy sheriffs. Here, we hold that Minn.Stat. § 179.63, subd. 4 (1980) operates to make the county board the sole employer for the purpose of negotiating CBA's under PELRA and that PELRA prevails over Minn.Stat. § 387.14 (1980) to the extent of any conflict.

In arriving at this last conclusion, we have used the excellent findings, conclusions and memorandum of the trial judge from Pope County in Case No. 81–112, which we adopt as our own decision and incorporate in full as an appendix to this opinion. Therefore, we hold that Minn. Stat. § 387.14 (1980) is limited by the Veterans Preference Act, the optional sheriff's civil service system, and PELRA. The legislative history of PELRA and the amendments considered following its adoption indicate that the legislature specifically rejected the position advocated by the sheriffs in these actions, *i.e.*, that sheriffs are co-employers for the purpose of negotiating a CBA. Prior to 1978, the provision read: " 'Public employer' means the state of Min-

---

1. The sheriffs rely in part on the language in Minn.Stat. § 387.14 (1980) that "[t]he sheriff shall appoint * * * the deputies * * * for whose acts he shall be responsible and whom he may remove at pleasure" and on the needs of the sheriff's office. Similar language is contained in other statutes as well, including Minn. Stat. § 386.33 (1980) (county recorders); Minn. Stat. § 390.05 (1980) (county coroners); and Minn.Stat. § 487.10 (1980) (clerks of district court). In this context, the argument that the legislature intended by the language in Minn. Stat. § 387.14 (1980) to indicate that the relationship between a deputy and a sheriff is necessarily confidential and, thus, within the exception to the Veterans Preference Act is not persuasive.

2. The scope of the exception contained in Minn.Stat. § 197.46 (1980) is quite clear. The use of the term "one chief deputy" excludes any interpretation that deputies fall within the confidential employee exception.

3. Minn.Stat. § 197.46 (1980) provides for the situation where the discharged employee is a veteran and the county has adopted a civil service system: "In all governmental subdivisions having an established civil service * * * commission * * * such hearing for removal or discharge shall be held before such civil service * * * commission."

nesota and its political subdivisions and any agency or instrumentality of either." Minn.Stat. § 179.63, subd. 4 (1971) (amended 1978). As noted, the statute currently defines employer, *inter alia,* as "the governing body of a political subdivision or agency or instrumentality thereof which has final budgetary approval authority." Minn.Stat. § 179.63, subd. 4 (1980). The county boards, not the sheriffs, have final budgetary authority.[4] Thus, we read Minn.Stat. § 179.63, subd. 4 (1980) to preclude clearly the possibility that sheriffs are co-employers. Although the sheriffs advance pursuasive policy arguments in favor of being included as co-employers, that position is not vindicated by the statutory language. Any remedy for this situation therefor lies with the legislature and not with this court.

We are still left, however, with the language in Minn.Stat. § 179.63, subd. 4 (1980) which reads: "Nothing in this subdivision shall be construed to diminish the authority granted pursuant to law to an appointing authority in respect to the * * * discharge of an individual employee * * *." Although we hold a sheriff is not a "public employer" or an "employer," we feel compelled to state that as the office of sheriff is an elected position with unique demands, it is inconceivable that a county board would ignore the sheriff in the bargaining process. In this regard, we note that Minn.Stat. § 179.63, subd. 4 (1980) preserves that residuum of power held by the sheriff under Minn.Stat. § 387.14 (1980), to the extent it is consistent with any CBA negotiated under PELRA, and recognizes the interest of the sheriff in the discipline and discharge of

his deputies. Accordingly, while a county board need not include the sheriff in a negotiating committee, we hold that the sheriff is entitled to be present at all negotiating sessions and that the sheriff's advice and counsel must be sought on all matters affecting the personnel in his office.[5]

The trial court's findings, conclusions and memorandum in Case No. 49881 are reversed. We find Deputy Murdock was improperly terminated for the reasons set forth. He is entitled to the protection of the CBA negotiated subject to PELRA and to the protection of the Veterans Preference Act. Since the rights under Minn. Stat. § 197.46 (1980) are largely incorporated and protected in the former, no separate hearings need be held and Deputy Murdock may proceed under the grievance procedures contained in the CBA. Because of the confusion in the law exemplified by the numerous cases brought before the courts, we find that no unfair labor practices have been committed on the part of any of the parties involved in these actions. Rather, the instant situation involves attempts to determine the scope and legality of the CBA's negotiated pursuant to PELRA for which no liability should attach. *See Minnesota Education Ass'n v. Independent School District No. 495,* 290 N.W.2d 627 (Minn.1980). Further, we need not decide whether the Aitkin County Board and Sheriff Sobey should be estopped from refusing to arbitrate in view of our holding that the CBA in that case is valid.

In Case No. 51995, the temporary restraining order and permanent injunctions

**4.** We note this only insofar as it is relevant in determining that the county boards are public employers for purposes of PELRA. This budgetary power is ultimately subject to this court's power to set a sheriff's salary whenever a county board's actions are arbitrary and unreasonable and made without adequate consideration of the duties of the office of sheriff. *See Zillgitt v. Goodhue County Bd. of Comm'rs,* 295 Minn. 9, 202 N.W.2d 378 (1972).

**5.** It is significant to note that, after oral arguments in this case, the legislature amended Minn.Stat. § 179.63, subd. 4 (1980) to read in part: " 'Public employer' * * * means * * * (c)

notwithstanding [section] 387.14 * * * the governing body * * * which has final budgetary approval authority * * * provided that the views of elected appointing authorities who shall have standing to initiate interest arbitration, and who are responsible for the selection, direction, discipline, and discharge of individual employees shall be considered by the employer * * *." Act of March 22, 1982, ch. 588, § 1, 1982 Minn.Laws 1341, 1341–42. This amendment is generally consistent with our holding that county boards are employers under PELRA and that a sheriff's opinions are to be considered in CBA negotiations.

issued by the trial court are vacated. Deputy Finn is also entitled to the protection of both PELRA and the sheriff's civil service system in Cass County. He cannot proceed under both, but may elect to chose the protection of the CBA as he has done and proceed to arbitration under that agreement.

We have already adopted the findings and conclusions of the Case No. 81–112, and the trial court is affirmed in all respects in that case.

## APPENDIX

STATE OF MINNESOTA
COUNTY OF POPE
IN DISTRICT COURT EIGHTH JUDICIAL DISTRICT

-------------------------------------------------

County of Pope, Plaintiff,
vs.                                     O R D E R

Pope County Deputy Sheriffs
Association, Lloyd Ochocki,
and Gerald Moe, Sheriff of Pope
County,           Defendants.

-------------------------------------------------

The above-entitled matter came on to be heard before the Court on the 28th day of July, 1980 at Morris, Minnesota. There were the following appearances:

JEFFREY D. KUHN
Assistant County Attorney,
Pope County
Glenwood, Mn. 56334            For Plaintiff

BRAD P. ENGDAHL
Special Assistant
Attorney General
515 Transportation Building
St. Paul, Mn. 55101            For Plaintiff

CHARLES O'CONNELL
O'Connell and O'Connell, P.A.
Attorneys at Law
Suite 200 Bremer Building
St. Paul, Mn. 55101            For Defendants
                               Pope County
                               Sheriffs
                               Association and
                               Lloyd Ochocki

JOSEPH P. MARSHALL
Marshall and Savage, P.A.
Attorneys at Law
9205 Lexington Avenue North
Circle Pines, Mn. 55014        For Defendant
                               Gerald Moe

The above-entitled matter consists of a Motion for Summary Judgment made on behalf of the plaintiff, and a Motion for Summary Judgment made on behalf of the defendants Pope County Sheriffs Association and Lloyd Ochocki.

It was agreed by counsel that briefs should be submitted in the above-entitled matter. The following briefs were received:

Memorandum of Law of
Defendants Lloyd Ochocki and
Pope County Deputy Sheriff's
Association
July 23, 1980   (1)            Charles O'Connell

County of Pope's Memorandum in
Support of its Motion for
Summary Judgment
July 24, 1980   (2)            Brad P. Engdahl

Defendant Sheriff Gerald Moe's
Summation and Final Arguments
August 11, 1980   (3)          Joseph P. Marshall

In addition, by permission of the Court, Amicus Curiae briefs were filed by the following:

Law Enforcement Labor Services,
Inc., Amicus Curiae Brief in sup-
port of Defendants Pope County
Deputy Sheriffs Association's and
Lloyd Ochocki' s Motion for
Summary Judgment
September 23, 1980   (5)       Donald Bye

Amicus Curiae Brief of the
Minnesota State Sheriffs
Association
October 20, 1980   (7)         Joseph P. Marshall

The following reply briefs were filed:

Defendants, Pope County
Deputy Sheriffs Association
and Lloyd Ochocki, Rebuttal
Argument and Authority for
Non-introduction of New
Causes of Discharge at
Arbitration
August 29, 1980   (4)          Charles O'Connell

County of Pope's Memorandum in
Reply to Memorandum of
Amicus Curiae
October 2, 1980   (6)          Brad P. Engdahl

Law Enforcement Labor Services,
Inc., Amicus Curiae Brief in
Reply to Memorandum of
Plaintiff County of Pope and
Amicus Curiae Brief of Minnesota
State Sheriffs Association
November 5, 1980   (8)         Donald Bye

County of Pope's Memorandum in
Reply to Memoranda of
Defendant Association, Defendant
Ochocki and Amicus Law Enforce-
ment Labor Services, Inc.
November 10, 1980   (9)          Brad P. Engdahl

Memorandum of Defendants
Lloyd Ochocki and Pope County
Deputy Sheriffs Association to
Memorandum of Amicus Curiae
Sheriffs Association and County
of Pope's Reply Memorandum to
Memorandum of Amicus Curiae
November 10, 1980   (10)         Charles O'Connell

Based on the arguments of counsel, the briefs hereinbefore submitted, and all files and records herein,

IT IS HEREBY ORDERED that the Motion for Summary Judgment of Pope County Deputy Sheriffs Association and Lloyd Ochocki be granted in the following particulars:

(1) That the Labor Agreement dated January 8, 1980 between Pope County Deputy Sheriffs Association and the Pope County Board of Commissioners is a binding agreement under Minnesota Public Employees Labor Relations Act of 1971, as amended.

(2) That the defendant Lloyd Ochocki shall be reinstated to the position of deputy sheriff of Pope County, with back pay and all rights and benefits from the date of his alleged discharge on March 17, 1980.

(3) That the defendants Pope County Deputy Sheriffs Association and Lloyd Ochocki are entitled to their costs and disbursements.

(4) That damages, if any, suffered by defendant Lloyd Ochocki by reason of his discharge should be determined in accordance with the terms of the Labor Agreement dated January 8, 1980.

In all other respects such Motion is denied.

That the Motion for Summary Judgment of the County of Pope is granted in the following particulars:

(1) That the County of Pope did not commit an unfair labor practice in respect to the defendant Lloyc [sic] Ochocki under Minn.Stat. 179.68.

In all other respects such Motion is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

A thirty (30) day stay of entry of judgment is ordered.

Dated: December 31, 1980

s/ Thomas J. Stahler
JUDGE

## MEMORANDUM

### FACTS

Defendant Gerald Moe was appointed Sheriff of Pope County by the Board of Commissioners in November 1979 to fill the unexpired term of Ira Dale Emmons, deceased; that at the time of the Moe appointment Lloyd Ochocki was a Pope County Deputy Sheriff with approximately eight years of continuous service; that in November 1979 a written labor contract between Pope County Deputy Sheriff's Association and the Pope County Board of Commissioners had been in effect since January 1st, 1979 and was in effect at the time of Moe's appointment. The Pope County Board of Commissioners and Pope County Deputy Sheriff's Association on or about January 8, 1980 entered into a Labor Agreement effective January 1, 1980 which Labor Agreement was in effect on March 17, 1980. On March 17, 1980, Gerald Moe, Pope County Sheriff, by letter dated March 17, 1980, to Lloyd Ochocki, deputy sheriff of Pope County, notified Lloyd Ochocki of his discharge. The letter stating:

"Under Statute 387.14, I am removing you from the position of deputy. The date of removal will be effective today the 17th day of April, 1980. All county property that you have must be turned in on the 17th day of April also."

That on April 21, 1980 Lloyd Ochocki in a letter to the Pope County Board of Commissioners, pursuant to Article VI of the Labor Agreement between Pope County Deputy Sheriff's Association and Pope County Board of Commissioners, objected to his discharge from the position of deputy, as a violation of the Labor Agreement and specifically Article XII, Paragraph 12.8;

Ochocki demanded his rights under the grievance procedure included but not limited to immediate reinstatement, back pay, and reinstating of full rights and benefits. On May 12, 1980 Lloyd Ochocki, in a letter to Pope County Board of Commissioners demanded immediate binding arbitration and stating that:

"The grievance filed with this Board on April 21, 1980 is incorporated by reference."

On May 13, 1980 Pope County Deputy Sheriff's Association by its representative Lloyd Ochocki filed a Petition for Mediation with the Minnesota Bureau of Mediation Services; no mediation has been held.

On the 21st day of May 1980 the plaintiff Pope County brought a Declaratory Judgment action pursuant to Chapter 555 M.S.A. seeking an order from the Court declaring:

(1) That Article XII of the Labor Agreement between Pope County Deputy Sheriff's Association and Pope County Board of Commissioners, dated January 8, 1980 be held null and void together with any reference in said agreement that purports to grant to Pope County the right to employ and terminate sheriff's deputies in Pope County.

(2) For an order of the Court declaring that M.S.A. 387.14 supersedes the Labor Agreement between Pope County Deputy Sheriff's Association and the County Board of Commissioners dated January 8, 1980 and determining that the Sheriff may remove at his pleasure a deputy pursuant to said statute;

(3) For an order of the Court that the County of Pope and its Board of Commissioners acted in good faith and are not liable thereunder as a result of the Labor Agreement between Pope County Sheriff's Association and Pope County Board of Commissioners dated January 8, 1980 by reason of the dismissal of Deputy Sheriff Lloyd Ochocki by Sheriff Gerald Moe.

The defendant Lloyd Ochocki answered and counterclaimed as against the plaintiff County of Pope alleging among other things that: Pope County Board of Commissioners is the governing body having final budgetary approval authority as defined in M.S.A. 179.63 Subd. 4 and the employer within the meaning of this statute; that Pope County Deputy Sheriff's Association is an employee organization within the meaning of M.S.A. 179.63 Subd. 5; that Lloyd Ochocki is a public employee within the meaning of M.S.A. 179.63, Subd. 11; that the Labor Agreement existing between Pope County Board of Commissioners and the Pope County Deputy Sheriff's Association is in full force and effect and in particular that Article XII, Section 12.8 states:

"No regular employee shall be discharged during the term of this agreement except for due cause * * *."

and, that said Lloyd Ochocki was discharged without due cause. Ochocki sought an order of the Court:

(1) Declaring the Labor Agreement between Pope County Deputy Sheriff's Association and Pope County Board of Commissioners to be a binding agreement under the Minnesota Public Employees Labor Relations Act of 1971 as Amended and in accordance with the contract dated January 8, 1980.

(2) For an order of the Court determining that a deputy sheriff may be removed only in accordance with the Labor Agreement and that M.S.A. 387.14 is not applicable where such Labor Agreement exists.

(3) For an order reinstating defendant Lloyd Ochocki to his position as deputy sheriff with full back pay together with rights and benefits from date of termination.

(4) For an order of the Court that Pope County Board of Commissioners committed unfair practices within the meaning of the Public Employees Labor Relations Act of 1971, as Amended, to permit the discharge of defendant Lloyd Ochocki without due cause, and by not submitting the issue of discharge and reinstatement to binding arbitration in accordance with the Labor Agreement that existed.

(5) For an order of the Court directing that the Sheriff and Pope County Board of

Commissioners shall hereafter abide by the Labor Agreement and take no further action with respect to defendant Lloyd Ochocki or the Pope County Deputy Sheriff's Association except in accordance with the Labor Agreement.

Defendant Gerald Moe, Sheriff, Pope County, answered admitting all allegations of plaintiff Pope County.

Deputy Sheriffs Association of Pope County takes the same position as defendant Ochocki.

Thereafter plaintiff County of Pope on July 17, 1980 moved for Summary Judgment on the grounds there is no genuine issue as to material fact and that it is entitled to judgment as a matter of law. On the 8th day of July, 1980 Pope County Deputy Sheriffs Association and defendant Lloyd Ochocki moved for Summary Judgment on the grounds there is no genuine issue as to any material fact; that defendant Ochocki is entitled to judgment as a matter of law.

The first issue in this matter is whether a collective bargaining agreement entered into pursuant to the statutory requirements of the Minnesota Public Employment Labor Relations Act (PELRA) of 1971, as amended, supersedes or modifies the statutory authority granted to the sheriff pursuant to Minn.Stat. 387.14 to discharge a deputy at will, and the second issue is whether Minn. Stat. 179.63, Subd. 4 supersedes or modifies Minn.Stat. 387.14.

In order to determine these issues the employer-employee status of the defendant Ochocki must first be determined.

Minn.Stat. 179.63, Definitions, Subd. 4, reads as follows:

" 'Public Employer' or 'Employer' means * * * * (c) The governing body of a political subdivision or agency or instrumentality thereof which has final budgetary authority, in respect to employees of that subdivision, agency or instrumentality."

Minn.Stat. 387.14 Deputies, provides as follows:

"The county board shall determine the number of permanent full time deputies and other employees and fix the compensation for each position. The county board shall also budget for special deputies, jailers, matrons, bailiffs and other temporary employees and shall fix their rate of compensation. The sheriff shall appoint in writing the deputies and other employees, for whose acts he shall be responsible and whom he may remove at pleasure. Before entering upon his official duties, the oath and appointment of each shall be filed with the register of deeds."

In that the county board, pursuant to Minn.Stat. 387.14 is the governing body of the political subdivision which has final budgetary approval of deputy sheriffs, such county board is the public employer.

The PELRA of 1971, Minn.Stat. 179.61 Public Policy, provides:

"It is the public policy of this state and the purpose of sections 179.61 to 179.77 to promote orderly and constructive relationships between all public employers and their employees, subject however, to the paramount right of the citizens of this state to keep inviolate the guarantees for their health, education, safety and welfare.

"The relationships between the public, the public employees, and their employer governing bodies imply degrees of responsibility to the people served, need of cooperation and employment protection which are different from employment in the private sector. So also the essentiality and public desire for some public services tend to create imbalances in relative bargaining power or the resolution with which either party to a disagreement presses its position, so that unique approaches to negotiations and resolutions of disputes between public employees and employers are necessary.

"Unresolved disputes between the public employer and its employees are injurious to the public as well as to the parties; adequate means must therefore be established for minimizing them and providing for their resolution.

"Within the foregoing limitations and considerations the legislature has determined that overall policy may best be accomplished by:

(1) granting to public employees certain rights to organize and choose freely their representatives;

(2) requiring public employers to meet and negotiate with public employees in an appropriate bargaining unit and providing for written agreements evidencing the result of such bargaining; and

(3) establishing special rights, responsibilities, procedures and limitations regarding public employment relationships which will provide for the protection of the rights of the public employee, the public employer and the public at large."

Considering the public policy as stated by the legislature, there can be little doubt that the termination of an employee's employment by the employer without cause is one of the factors that fall within the orderly and constructive relationships between all public employers and employees.

Minn.Stat. 179.70 Contracts; grievances; arbitration, Subd. 1 provides:

"A written contract or memorandum of contract containing the agreed upon terms and conditions of employment and such other matters as may be agreed upon by the employer and exclusive representative shall be executed by the parties. * * * * (and) all contracts shall include a grievance procedure which shall provide compulsory binding arbitration of grievances including all disciplinary actions."

Minn.Stat. 179.66, Subd. 2 provides:

"A public employer has an obligation to meet and negotiate in good faith with the exclusive representative of the public employees in an appropriate unit regarding grievance procedures and the terms and conditions of employment, but such obligation does not compel the public employer or its representative to agree to a proposal or require the making of a concession."

Minn.Stat. 179.63, Subd. 18 provides:

"The terms 'terms and conditions of employment' means the hours of employment, the compensation therefor including fringe benefits except retirement contributions or benefits, and the employer's personnel policies affecting the working conditions of the employees. * * * * *"

Our Supreme Court in *International Brotherhood of Teamsters vs. City of Minneapolis*, 302 Minn. 410, 225 N.W.2d 254, stated:

"A major purpose of PELRA is to further the resolution of labor disputes through negotiation. Because of the severe restrictions on strikes contained in the act, we believe that the legislature intended the scope of the mandatory bargaining area to be broadly construed so that the purpose of resolving labor disputes through negotiations could best be served. In our judgment, disciplinary matters of the type involved in this case were intended by the legislature to be a subject of mandatory negotiation under PELRA, and we so hold. Surely, whether an employee may be suspended for a period of 30 days without pay and without an opportunity to be heard, and whether a written reprimand may be inserted into his record with no opportunity to contest its contents, are matters which affect 'the working conditions of the employees' and thus are within the definition of the phrase 'terms and conditions of employment' found in § 179.63, Subd. 18. A suspension from employment without pay speaks for itself as a serious interruption of an employee's working conditions, while a written reprimand in an employee's record may have serious repercussions on his future progress as a public employee, which certainly must be considered to affect the conditions of his employment."

Applying the pronouncement of the Supreme Court in *Teamsters vs. City of Minneapolis, supra*, to the instant case, there can be no doubt that a complete discharge from employment without cause is a far more serious condition of employment than a mere suspension of 30 days without pay,

and is therefore, subject to mandatory arbitration under PELRA 179.61 to 179.77.

We must next determine whether defendant Ochocki has a property interest in his position of deputy sheriff. In *Bishop vs. Wood*, 426 U.S. 341 [96 S.Ct. 2074, 48 L.Ed.2d 684] (1976) a policeman who was a permanent employee for three years was discharged without hearing. A city ordinance spelled out the grounds under which an employee could be terminated. The Court held that the employee was only entitled to the procedure provided by local ordinance, pointing out that if the policeman could show a hearing procedure provided by either statute or contract, then indeed he had a "property interest" which was protected by law and due process was required.

Our Supreme Court in *Avis Boe and another vs. Polk County Library Board*, 299 Minn. 226, 217 N.W.2d 208, held that the petitioners, who were employed by Polk County and who were discharged as such employees and who claimed an independent review of such discharge under Minn.Stat. 179.571 (1969), had no such right of review, stating that the petitioners had not properly invoked either Minn.Stat. 179.571 (1969), which was repealed July 1, 1972, or Minn. Stat. 179.76, the present statute, stating that both statutes provide for "right of review of any grievance arising out of the interpretation of or adherence to terms and conditions of employment" and their rights must be ascertained by the nature of their contract of employment, citing *Cedarstrand [Cederstrand] vs. Lutheran Brotherhood*, 263 Minn. 520, 117 N.W.2d 213 (1962), in which case it was held that the usual employer-employee relationship is terminable at will of either party.

However, in the instant case defendant Ochocki has a property right interest in his employment pursuant to contractual agreement between the Deputy Sheriffs Association and his Employer, Pope County, and therefore, if such contract is legal, he would be entitled to due process, and specifically in respect to Article XII, para. 12.8 of such Agreement, which provides that "no regular employee shall be discharged during the term of this agreement except for due cause."

This brings us to the issue of apparent conflict between Minn.Stat. 387.14 (1969) and Minn.Stat. 179.63, Subd. 4 (1978). Minn.Stat. 387.14 provides: "The sheriff may remove a deputy at his pleasure"; whereas, 179.63, Subd. 4, insofar as relevant, provides as follows: "Nothing in this subdivision shall be construed to diminish the authority granted pursuant to law to an appointing authority in respect to the discharge of an individual employee insofar as such action is consistent with general procedures and standards relating to * * * * discharge which are the subject of an agreement entered into pursuant to Sections 179.61 to 179.77." (Underlining by Court).

In *International Brotherhood of Teamsters vs. City of Minneapolis*, supra, our Court held in interpreting 179.66, Subd. 5 that due to the unclearness and difficulty in understanding of the 1973 amendment to such statute, that where a conflict arises between a provision of a contract required by section 179.70 and a provision of the Home Rule Charter, the legislature intended to give priority to the Charter provision. In support of such conclusions the Supreme Court noted that the legislature made no change in that part of 179.72, Subd. 7, which provides that "no decision of the (arbitration) panel which violates any provision of the laws of Minnesota or rules or regulations promulgated thereunder or municipal charters or ordinances or resolutions enacted pursuant thereto, or which causes a penalty to be incurred thereunder, shall have any force and effect."

The Court went on to say that they were also guided by Minn.Stat. 645.16 which provides in part:

"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(5) the former law, if any, including other laws upon the same or similar subjects."

The Supreme Court again dealt with the interpretation of Minn.Stat. 179.66, Subd. 5

in the case of *Minnesota Arrowhead District Council 96 of American Federation of State, County and Municipal Employees vs. St. Louis County*, et al, 290 N.W.2d 608 (1980) in which case the Court held that the provisions of PELRA do not supersede the civil service law of the county, citing the Court's previous decision in *International Brotherhood of Teamsters vs. City of Minneapolis*, supra. Thus, the law of the state would appear to be that where a labor contract containing provisions required by PELRA is in conflict with a state statute, that the statute prevails.

It should be noted that in *Arrowhead District Council of American Federation vs. St. Louis County*, supra, and *International Brotherhood of Teamsters vs. City of Minneapolis*, supra, the Supreme Court dealt specifically with the interpretation of Minn. Stat. 179.66, Subd. 5 (1973), which enactment was determined by the Court to be unclear and ambiguous as it applied to a conflicting provision in a collective bargaining agreement and a civil service provision or a Home Rule Charter provision. It appears that the Supreme Court has never addressed the problem involved in the instant case where there is a conflict between two statutes (387.14 [1969] and 179.63, Subd. 4 [1978] ), and a collective bargaining agreement which apparently conflicts with one of such statutes (387.14). However, see *Civil Service Commission for the County of Wayne vs. Wayne County Board of Supervisors*, et al [384 Mich. 363], 184 N.W.2d 201.

Minn.Stat. 645.26 provides as follows:

"645.26 Irreconcilable provisions

"Subdivision 1. Particular controls general. When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

"Subdivision 2. Clauses in the same law. When, in the same law, several clauses are irreconcilable, the clause last in order of date or position shall prevail.

"Subdivision 3. Laws passed at same session. When the provisions of two or more laws passed during the same session of the legislature are irreconcilable, the law latest in date of final enactment, irrespective of its effective date, shall prevail from the time it becomes effective, except as otherwise provided in section 30.

"Subdivision 4. Laws passed at different sessions. When the provisions of two or more laws passed at different sessions of the legislature are irreconcilable, the law latest in date of final enactment shall prevail."

Simply applying Subd. 4 of the above to the instant case would mean that Minn. Stat. 179.63, Subd. 4 would prevail over Minn.Stat. 387.14. Applying Subd. 1 of Minn.Stat. 645.26 to the instant case requires either construing the statutes to give effect to both, or, if there is irreconcilable conflict, the manifest intention of the legislature should prevail.

In determining the intent of the legislature, we are guided by Minn.Stat. 645.16 Legislative Intent Controls, which is as follows:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(1) The occasion and necessity for the law;

(2) The circumstances under which it was enacted;

(3) The mischief to be remedied;

(4) The object to be attained;

(5) The former law, if any, including other laws upon the same or similar subjects;

(6) The consequences of a particular interpretation;

(7) The contemporaneous legislative history; and

(8) Legislative and administrative interpretations of the statute."

Applying the principles of Minn.Stat. 645.16 to the instant case, it would appear to the undersigned that the words of the 1978 amendment of 179.63, Subd. 4 are clear and free from ambiguity, stating simply that "Nothing in such amendment shall be construed to diminish the authority granted pursuant to law to an appointing authority in respect to the discharge of an individual employee insofar as such action is consistent with general procedures and standards relating to * * * * discharge, which are subject to an agreement entered into pursuant to Sections 179.61 to 179.77." It would appear the reasonable interpretation of such section would be that the appointing authority's power to discharge an employee is not diminished providing such discharge is consistent with the general procedures and standards relating to such discharge which is the subject matter of an agreement entered into pursuant to Sections 179.61 to 179.77.

However, assuming that the pertinent language of Minn.Stat. 179.63, Subd. 4 is ambiguous and not explicit, then according to Minn.Stat. 645.16 the intent of the legislature may be ascertained by considering the following:

1. The occasion and necessity for the law.

There can be little doubt that there existed occasion and necessity for the Law. In the 87 counties in the State of Minnesota the clerks of court, sheriffs, county recorders, treasurers and auditors all have one or more deputies who under the general statute may be discharged at the pleasure of the appointing authority. In many of such counties the deputies have PELRA collective bargaining agreements with their respective county boards, each party to such agreements believing in good faith that such employee cannot be summarily discharged without cause. If such employees have no employment security whatsoever under such contracts, it makes a mockery of PELRA.

2. Circumstances under which it was enacted.

It should be noted that 179.63, Subd. 4 was amended in 1978. A review of the legislative history of the language contained in Subd. 4 indicates that the early drafts of such legislation encompass the theory of joint employment by the appointing authority and the county board; provided that the signators to negotiated labor agreements would be signed by both and further that in the event of disagreement between the county board and the appropriate appointing authority as to the final terms of a negotiated agreement, the decision of the county board shall be final and binding on behalf of the county as employer for all employees of the county. The early draft also provided that nothing in this section shall diminish the appointing authority's authority of selection, direction, discipline or discharge of employees of the appointing authority, except as such matters may be covered by an agreement entered into pursuant to Minn.Stat. 179.61 to 179.62. In the final bill as passed, the theory of joint employer as between the county board and the appointing authority was completely stricken and the language referring to the appointing authority's authority to discharge was refined by carrying out the same meaning and intent as the preliminary bill. Although of no determinative importance, it is interesting to note that the Minnesota Sheriffs Association recognized the interpretation of the final bill adopted, commenting thereon in Summer 1978 Volume 16, No. 2 of their official publication of the Minnesota State Sheriffs Association in reference to the 1978 amendment of Subd. 4 that:

"It appears from the terms of this law that the only control the sheriff will have over selection, direction, discipline and discharge of his employees will be as set out in the terms of a labor agreement that is executed between a union and a county board without the sheriff having any authoritative say as to what the terms of the agreement should be."

It appears that although the legislature considered the idea of giving the appointing authority joint powers with the public employer as to labor contracts, such theory was abandoned. However, the theory of making discharge of an employee subject to the terms of a labor agreement was consistent in the early drafts as well as the final bill.

3. The mischief to be remedied.

Needless to say, security from being summarily discharged without cause, after probationary term, is a most essential element of any labor contract. A discharge without cause of an employee with years of faithful service is disastrous to the individual, abhorrent to equitable principles, and violative to the entire law dealing with collective bargaining. The legislature has attempted to remedy this mischief.

4. The object to be attained.

Our Supreme Court has held that the legislature intended the scope of mandatory bargaining to be broadly construed so that the purpose of resolving labor disputes through negotiations could best be served. *City of Richfield vs. Local No. 1215 International Assn. of Fire Fighters*, 276 N.W.2d 42 (1979) and *Minneapolis Federation of Teachers, Local 59 vs. Minneapolis Special School District No. 1*, 258 N.W.2d 802 (1977).

The interpretation given would implement the policy of the legislature stated in 179.61 and 179.76.

5. Former law, if any, including other laws upon the same or similar subject.

The provisions of 387.14 have been long standing; however, in respect to other laws upon the same or similar subject, Minn.Stat. 387.31 provides:

"In any county of this state a civil service personnel system may be established in the sheriff's department."

And 387.37 Removal Only Upon Charges:

"No deputy sheriff or employee after continuous employment for one year shall be removed and discharged except for cause upon written charges and after an opportunity to be heard in his own defense as in section 387.31 to 387.45 hereinafter provided. * * * * "

Such civil service personnel systems have been established throughout the state with apparent beneficial results, in spite of the legislature making mandatory that removal of a deputy sheriff after one year of employment shall only be for cause under due process. Thus the interpretation given to 179.63, Subd. 4 is neither new nor radical and is consistent with the stated policy of PELRA.

6. Consequences of the particular interpretation.

The consequences of this interpretation would require that in instances where a collective bargaining agreement exists, dealing with discharge of a deputy sheriff, the terms of such agreement must be followed. Such interpretation is in agreement with the stated policy of PELRA.

7. Contemporaneous legislative history.

See County Civil Service Personnel System, Minn.Stat. 387.31 as set forth above.

8. Legislative and administrative interpretations of the statute.

See decision in Greg J. Sertich, St. Louis County Sheriff, Duluth, Minnesota, and St. Louis County Board of Commissioners, Duluth, Minnesota, and National Association of Police Officers, Local 159, Duluth, Minnesota, Case No. 77–P.R.–740–A, Bureau of Mediation Services State of Minnesota, dated at St. Paul, Mn. February 16, 1978, which holds that the County Board of Commissioners is "the public employer" of all

county employees in the County of St. Louis for the purpose of the definition of "public employer" under Minn.Stat. 179.63, Subd. 4, and in addition the decision deals with the practicality of such decision as it applies to the office of the Sheriff of St. Louis County.

Thus, the Court determines that Minn. Stat. 179.63, Subd. 4 modifies the application of Minn.Stat. 387.14 to the extent that where the Pope County Deputy Sheriffs Association had a collective bargaining agreement with the County Board of Pope County in respect to "the discharge of deputies" and which agreement was pursuant to Minn.Stat. 179.61 to 179.77, the discharge of a deputy must be in accordance with such collective bargaining agreement.

This conclusion is based upon the following:

1. The general stated policy of Public Employees Labor Relations Act of 1971 as amended.

2. Minn.Stat. 645.26, Subd. 4.

3. The manifest intention of the legislature under Minn.Stat. 645.26, Subd. 1.

4. The legislative intent in respect to Minn.Stat. 179.63, Subd. 4, as determined under Minn.Stat. 645.16, ¶ 1 through ¶ 8.

5. Such interpretation construes both Minn.Stat. 387.14 and Minn.Stat. 179.63, Subd. 4 as required by Minn.Stat. 645.26, Subd. 1 so as to give effect to both statutes under circumstances intended by the legislature.

The defendant Ochocki asserts unfair labor practices against the County of Pope by permitting discharge of Ochocki without cause and not agreeing to arbitrate the discharge in accordance with the January 8 collective bargaining agreement. In this respect, on May 12, 1980 defendant Ochocki requested binding arbitration by letter to the Pope County Commissioners. On May 13, 1980 defendant Ochocki filed a "Petition for Mediation" with the Bureau of Mediation Services. The Bureau of Mediation Services cancelled the mediation meeting schedule for June 6, 1980 on the grounds that the matter was outside the scope of its jurisdiction.

On May 21, 1980, eight days after Ochocki's request for arbitration, the County of Pope commenced the present action to determine the issues involved.

In that the Court has determined that the discharge of Ochocki is arbitrable under Article XII, section 12.8 of the January 8, 1980 agreement, the only issue to determine is whether the County of Pope committed unfair labor practices by refusing to arbitrate. The Supreme Court in *Minnesota Education Association vs. Independent School District 495*, 290 N.W.2d 627, 631 (Minn.1980), commented as follows:

> "Plaintiffs agree that the school district's refusal to submit their grievances to arbitration constituted an unfair labor practice under PELRA, regardless of the school district's "good faith" or lack thereof. As we noted in *State vs. Berthiaume*, 259 N.W.2d 904, 909, (Minn.1977), PELRA and the Uniform Arbitration Act are to be construed as consistent with each other. <u>A finding that the school district's refusal to arbitrate constitutes an unfair labor practice would "chill" rights granted under the Uniform Arbitration Act to contest the arbitrability initially in court.</u>" (Underlining by Court).

Considering the voluminous briefs submitted by the various parties in this matter and the contents thereof, together with the state of the law in respect to the issues involved herein, it cannot be said that the question of whether or not arbitration was required under the January 8, 1980 labor agreement was clear and convincing; thus the County of Pope had the right to have such issue determined as a matter of law prior to arbitrating the issue, and should not be penalized for its rightful resort to the courts for the determination of such issue.

Dated: December 31, 1980

s/ <u>Thomas J. Stahler</u>
JUDGE